

FILED
Feb 14 2025, 11:36 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



# IN THE
# Indiana Supreme Court

Supreme Court Case No. 23S-DI-186

## In the Matter of
## Nathan Pearson,
*Respondent.*

---

Decided: February 14, 2025

Attorney Discipline Action

Hearing Officer Robert C. Reiling, Jr.

---

**Per Curiam Opinion**

Chief Justice Rush and Justices Massa, Slaughter, Goff, and Molter concur.

**Per curiam.**

We find that Respondent, Nathan Pearson, committed attorney misconduct arising from his sexual relations with three clients. For this misconduct, we conclude Respondent should be disbarred.

This matter is before the Court on the report of the hearing officer we appointed to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Amended Verified Complaint for Disciplinary Action." Respondent's 2015 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* Ind. Const. art. 7, § 4.

## Procedural Background and Facts

The Commission filed a three-count amended complaint against Respondent on February 20, 2024. Following an evidentiary hearing in August 2024, during which Respondent was represented by counsel,[1] the hearing officer issued a report finding misconduct as charged and recommending disbarment.

Neither party has filed a petition for review or brief on sanction. When neither party challenges the findings of the hearing officer, "we accept and adopt those findings but reserve final judgment as to misconduct and sanction." *Matter of Levy*, 726 N.E.2d 1257, 1258 (Ind. 2000).

**Count 1.** "Client 1," an 18-year-old woman dealing with substance use disorder and a history of sexual abuse, was arrested on drug charges in late 2015. Respondent was appointed as her public defender in early 2016. Respondent's visits with Client 1 initially occurred at the county jail, and later at Respondent's home office after Client 1 was released on recognizance. Soon, Respondent began scheduling the meetings after business hours, and these meetings all followed the same general pattern. Respondent wore casual clothing such as shorts and a T-shirt, offered Client 1 bourbon from a fancy bottle—despite her being underage to

---

[1] Counsel has since withdrawn his appearance.

consume alcohol—and told Client 1 that he was stressed and "horny" and needed a release. During the first such meeting, Respondent approached Client 1 with an erection visible through his clothing and stood close to her face. At Respondent's urging, Client 1 performed oral sex on him. Subsequent after-hours meetings included oral and vaginal sex. Client 1 testified that, while none of these encounters involved an explicit use of force or lack of consent, she "felt compelled because of the situation." (Tr. at 104). Respondent and Client 1 also exchanged explicit photos and texts, including messages where Respondent asked Client 1 if she was interested in a "threesome" with another woman. Client 1 later disclosed her relationship with Respondent, as well as some of the text messages, to a county probation officer ("Lucas") with whom Client 1 was friends.

Client 1's criminal case was initially resolved by guilty plea in May 2016. But Respondent continued to represent Client 1 thereafter, including on a motion filed in February 2017 to convert Client 1's conviction to a misdemeanor after Client 1 had successfully completed probation. Respondent did not formally withdraw from the criminal case until October 2017.

**Count 2.** Respondent was appointed to represent "Client 2" in February 2018 in four criminal cases. Client 2, like Client 1, was also battling a substance use disorder and some of the charges she faced involved drug possession. Respondent initially met with Client 2 and her husband at Respondent's home office. About one week later, Client 2 met with Respondent a second time after hours at his solo practice office. Client 2 brought her two young stepchildren with her for that meeting because her husband was unable to go and she was uncomfortable meeting with Respondent alone. Respondent placed the children in a nook with a television and offered Client 2 a glass of dark liquor poured from a fancy bottle, which Client 2 declined. Respondent briefly discussed the cases before quickly turning the conversation to sex, telling Client 2 "sex can relieve stress and I can help you with that." (*Id.* at 142). Respondent then led Client 2 to another room away from her children, sat Client 2 in a chair, removed his penis from his pants, placed his arms on the chair, and encouraged Client 2 to perform oral sex on him. Client 2 testified she was unable to stand up from the chair because of how Respondent was

positioned. Client 2 proceeded to perform oral sex. She testified that she did so "[b]ecause I was a vulnerable drug addict that was in a lot of trouble and . . . I thought if I did that I would get out of some of my trouble." (*Id.* at 145).

After Client 2 reached a global plea agreement, she met with probation officer Lucas for a presentence investigation report, where she disclosed the sexual contact with Respondent. Lucas then reported the incident both verbally and in writing to the presiding judge, who immediately convened an emergency attorneys-only hearing. Respondent withdrew from Client 2's cases following the hearing, another public defender was appointed to complete the representation, and Client 2's plea was renegotiated by successor counsel on terms substantially identical to the initial agreement.

**Count 3.** Unlike the first two counts, Respondent and "Client 3" met, and began an intimate relationship, prior to the representation.

In March 2017, Client 3—who also has a history of substance use and sexual abuse—was charged in an initial case with drug offenses. Client 3 retained Respondent, who was an associate with Starkes Law Office at the time, to represent her and paid a $750 retainer. Client 3 was charged with additional drug offenses in a second case in April 2017. Respondent agreed to represent her in that case as well, and although no separate retainer was paid up front, Client 3 believed she would owe additional fees for that representation.

At some point thereafter, Client 3 met Respondent at his home. Respondent poured Client 3 a glass of brown liquor from a fancy bottle, which she drank. She has little memory of what happened next. Client 3 eventually woke up naked in Respondent's bed and saw Respondent emerging naked from the bathroom and wiping his genitals with a towel. Client 3 believed intercourse had occurred because of how her own genitals felt. She asked Respondent if he would get in trouble for having sex with a client, and Respondent told her it was okay because they had been intimate prior to the representation.

Still later, after Respondent's employment with Starkes Law Office ended, the office sent Client 3 a letter informing her that Respondent had left and that she still owed the firm $739.78. Client 3 responded by writing a letter to Starkes evincing her belief that Respondent had written off these fees in exchange for Client 3 having sex with him. Starkes gave the letter to Respondent and told him to take care of it.

# Discussion

Indiana Professional Conduct Rule 1.8(j) categorically forbids sexual relations between an attorney and a client unless an intimate relationship already existed prior to the representation. Beginning a sexual relationship with a client during the representation is inherently exploitative given the power imbalance between an attorney and his or her client. *See* Prof. Cond. R. 1.8(j), cmt. 17. And even in situations where an intimate relationship predates the representation, an attorney who proceeds with the representation risks placing his or her own interests in conflict with the client's interests. *See id.*, cmt. 18.

The hearing officer found, as do we, that Respondent violated Rule 1.8(j) by having sexual relations with Clients 1 and 2 when there was not a sexual relationship prior to the representation. The hearing officer also found, as do we, that Respondent violated Professional Conduct Rules 1.7(a) and 8.4(d) in connection with his representation of Client 3 by engaging in a concurrent conflict of interest and accepting sexual favors as payment for legal services.

Improper sexual relations with clients can take many forms, some more insidious than others. At one end of the spectrum are isolated lapses in judgment that cause no additional harm beyond that inherent in the violation itself. For example, in *Matter of Tsoutsouris*, we imposed a 30-day suspension with automatic reinstatement where the attorney engaged in a brief period of consensual sexual relations with a client he was representing in child support and marital dissolution cases. 748 N.E.2d 856, 857, 860 (Ind. 2001). We noted in mitigation that the representation was not actually impaired and the client hired the attorney to represent

her in additional matters even after the sexual relationship ended. *Id.* at 860.

At the other end of the spectrum are actions that are not merely exercises in poor judgment, but predatory. For example, we suspended a criminal defense attorney for at least one year, without automatic reinstatement, after he attempted to arrange a tryst with a woman arrested for prostitution in order to trade sex for legal services. *Matter of Hollander*, 27 N.E.3d 278, 279 (Ind. 2015). We accepted the resignation (and its attendant five-year minimum suspension) of an attorney who solicited sexual favors from a client in exchange for a discount on attorney fees and later offered to represent the client for free if she did not report his misconduct to the Commission. *Matter of Clark*, 201 N.E.3d 201, 201-02 (Ind. 2023). And we imposed the ultimate sanction of disbarment on an attorney who repeatedly exchanged legal services for sexual favors from vulnerable individuals, including a 17-year-old girl. *Matter of Wood*, 489 N.E.2d 1189, 1190-91 (Ind. 1986).

Although Respondent relied on *Tsoutsouris* in his proposed findings submitted to the hearing officer, Respondent's pattern of predatory behavior and the sheer depravity of his conduct align his case in severity with *Wood*. He exploited three highly vulnerable clients, taking advantage not only of the power imbalance inherent in the attorney-client relationship, but also the specific weaknesses arising from the clients' histories of drug use, sexual abuse, and other trauma. Client 1 had only recently reached the age of majority when Respondent summoned her to his home after hours, plied her with alcohol, and initiated sexual relations. Respondent took advantage of Client 2 during an after-hours meeting when her husband had been unable to accompany her, separated Client 2 from her children, and positioned himself in a manner that made it difficult for Client 2 to avoid his advances. Finally, Respondent had relations with Client 3 when she was in an impaired state, and he waived part of his fee as a quid pro quo for sexual favors.

The Commission sought Respondent's disbarment, the hearing officer recommended Respondent's disbarment, and we readily agree that Respondent's misconduct merits disbarment.

# Conclusion

The Court concludes that Respondent violated the Indiana Rules of Professional Conduct as charged. For Respondent's professional misconduct, the Court disbars Respondent from the practice of law in this state effective immediately. Respondent shall fulfill all the duties of a disbarred attorney under Admission and Discipline Rule 23(26).

The costs of this proceeding are assessed against Respondent and the hearing officer is discharged with the Court's appreciation.

Rush, C.J., and Massa, Slaughter, Goff, and Molter, JJ., concur.

RESPONDENT PRO SE
Nathan Pearson
Winamac, Indiana

ATTORNEYS FOR INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
Adrienne L. Meiring, Executive Director
Stephanie K. Bibbs, Deputy Director
Mark Carnell, Staff Attorney
Mark Conner, Staff Attorney
Indianapolis, Indiana